[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10338
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-23590-KMW

CAROLINE ARMSTRONG,

Plaintiff-Appellant,

versus

CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 8, 2016)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Caroline Armstrong appeals the summary judgment in favor of her former

employer, Credit Agricole Corporate and Investment Bank. Armstrong complained

that Credit Agricole interfered with her use of and retaliated after she exercised her right to take leave under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615(a). The district court ruled that Credit Agricole terminated Armstrong for repeatedly violating fraud prevention policies of the bank and refusing to transfer to a position that she could perform. We affirm.

Armstrong, an assistant relationship manager, thrice violated her employer's fraud prevention policies, had her work duties severely restricted, and received a poor evaluation before she took maternity leave. In October 2012, Armstrong released a wire transfer without verifying the transaction with the client. The general manager of the bank declined to fire Armstrong, but he warned her that she would be terminated "on the spot" for another violation of the security policy. In June 2013, Armstrong allowed an imposter to initiate a wire transfer and liquidated an investment to fund the transfer, which fortunately did not occur. As punishment, Armstrong's manager suspended Armstrong's trading privileges for 90 days and required her to sign a copy of the policies for securities transactions and wire transfers. Armstrong's third infraction occurred after she notified her manager in October 2013 that she was pregnant. In January 2014, an internal audit exposed that Armstrong had committed two security infractions. Bank officials agreed not to fire Armstrong because of her pregnancy, but the head of compliance of the bank sent Armstrong an email in which he "forbid [her] from conducting any

2

Securities Transactions and any Banking Transactions until further notice." Bank officials agreed to transfer Armstrong to another position, but because a transfer required training and adjustment, the officials decided to transfer Armstrong when she returned to work. In February 2014, Armstrong's manager reiterated in Armstrong's performance evaluation that she had "been demoted to perform administrative task[s] only" and would "continue at this performance level until further notice."

Armstrong left on maternity leave on May 5, 2014, and a couple of weeks after she returned to work on July 31, 2014, officials at Credit Agricole asked Armstrong to transfer to a position in the compliance department or to another administrative position, but Armstrong refused to transfer. Armstrong demanded reinstatement or a one-year severance package that included a bonus. After bank officials spoke with and sent emails to Armstrong explaining that the limitation on her duties disqualified her from serving as an assistant relationship manager and that the bank had no choice but to transfer or terminate her, the bank fired Armstrong.

Armstrong complained that Credit Agricole had interfered with her right to reinstatement under the Act and that she had been demoted in retaliation for taking leave under the Act. Credit Agricole moved for summary judgment on the ground that it fired Armstrong because she refused to transfer to another position after

being barred from performing tasks essential to her prior position as an assistant relationship manager. The district court granted summary judgment in favor of Credit Agricole.

We review *de novo* a summary judgment and view all facts in favor of the nonmovant. *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1203 (11th Cir. 2001). Summary judgment is appropriate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The district court did not err by entering summary judgment against Armstrong's complaint of interference. Armstrong alleged that Credit Agricole interfered with her right, or denied her a right to which she was entitled, under the Act to reinstatement to her former position on returning from maternity leave. *See Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241 (11th Cir. 2010). But Credit Agricole established that its refusal to reinstate Armstrong was "wholly unrelated" to her use of leave. *See Strickland*, 239 F.3d at 1208. Undisputed evidence established that Armstrong thrice violated her employer's security policies; she had been barred from performing securities and banking transactions required of an assistant relationship manager; after she returned from maternity leave, bank officers determined what positions were available for Armstrong to fill; and Armstrong was fired because she refused to accept a position whose tasks

4

she could perform. It is of no moment if, as Armstrong argues, the head of compliance acted in self-preservation when he decided to discipline and later to terminate Armstrong because those decisions were unrelated to Armstrong's use of leave under the Act. *See id.* Armstrong argues that she had the "right to reject restoration to a non-equivalent position," but Armstrong had no right to reinstatement to the position of assistant relationship manager. Armstrong was demoted before she went on leave as discipline for her third violation of bank security policies.

The district court also correctly entered summary judgment against Armstrong's complaint of retaliation. Even if we were to assume that Armstrong established a *prima facie* case of retaliation, Credit Agricole proffered a legitimate, nondiscriminatory reason for terminating Armstrong. *Schaaf*, 602 F.3d at 1243. As mentioned above, Armstrong violated security procedures designed to protect the bank and its customers from fraud, and those violations, Armstrong admitted, provided grounds to terminate her. The temporal proximity between Armstrong's protected activity and her termination is not evidence of pretext. *See id.* Bank officials testified, without dispute, that they delayed transferring Armstrong until she returned from leave to ensure she transitioned smoothly into a new position, and that she was terminated because she refused to accept either of the positions offered to her. Armstrong argues that the failure of Credit Agricole to terminate her

5

after her third security violation establishes pretext, but bank officials' statements and emails reveal that Credit Agricole never intended to fire Armstrong. Credit Agricole fired Armstrong only after she refused the other positions that she could perform. Armstrong also argues that a bank official's statement that "options were open" when Armstrong returned from leave revealed that Credit Agricole acted with retaliatory animus, but the statement, taken in context, meant that the official intended to decide where to transfer Armstrong upon her return because it was impossible to complete her training before she left on maternity leave. Armstrong failed to prove that her use of leave under the Act was the motivation for her termination.

We **AFFIRM** the summary judgment in favor of Credit Agricole.